**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-02406-STV

ANTON EDLICICO,

     Petitioner,

v.

JUAN BALTASAR; *et al*,

     Respondents.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

     This matter is before the Court on Petitioner Anton Edlicico's Petition for Writ of Habeas Corpus (the "Petition"). [#1] The parties have consented to proceed before a United States Magistrate Judge for all proceedings, including entry of a final judgment. [#8] In his Petition, Mr. Edlicico seeks a writ of habeas corpus under 28 U.S.C. § 2243, challenging his detention in Immigration and Customs Enforcement ("ICE") custody. [#1] Mr. Edlicico seeks a writ ordering Respondents to release him from ICE custody on the same terms of supervision as were in place prior to his detention and enjoining Respondents from removing or attempting to remove Mr. Edlicico while he seeks to legalize his status through the provisional waiver process. [*Id.* at 32-33] For the following reasons, Mr. Edlicico's Petition is **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND[1]

Mr. Edlicico is a 39-year-old man who was born in the former Soviet Union, in what is now Moldova.  [#1 at ¶ 47]  Mr. Edlicico has resided in the United States since 2007.  [*Id.*]  According to Respondents, Mr. Edlicico was originally admitted to the United States on a nonimmigrant visa but overstayed the authorized period of stay under the visa.  [#10 at 3]  Thus, in October 2008, the Department of Homeland Security issued Petitioner a Notice to Appear ("NTA") and initiated removal proceedings.  [*Id.*]  Mr. Edlicico was subject to a final order of removal dated January 16, 2014.  [##1 at ¶ 49; 10 at 3]

According to Respondents, Mr. Edlicico was detained and arrested in April 2015 to effectuate Mr. Edlicico's removal to Moldova.  [#10 at 4]  Mr. Edlicico requested a stay of his removal so that he could sell his property, and that stay was granted for six months.  [*Id.*]  Mr. Edlicico reported to ICE in November 2015 and was issued an order of supervision.  [*Id.*]  In February 2016, however, Mr. Edlicico failed to report to ICE per his order of supervision.  [*Id.*]

According to Petitioner, in 2017 he married a United States citizen.  [#1 at ¶ 50]  Mr. Edlicico's spouse filed an I-130 petition on his behalf in 2019.  [*Id.*]  While the I-130 petition was pending, Petitioner filed a Form I-212 Application to reapply for admission for approval.  [*Id.* at ¶ 51]  The I-130 petition and I-212 application were approved in January 2024.  [*Id.* at ¶¶ 50, 52]

After these documents had been approved, Petitioner intended to file a Form I-601A waiver application seeking to waive inadmissibility for unlawful presence.  [*Id.* at ¶

---

[1] The parties do not appear to dispute most of the material facts of Mr. Edlicico's immigration history.  [*See* ##1 at ¶¶ 47-69; 10 at 3-5]  The Court notes where the material facts differ.

52]  However, the regulations provide that an I-601A waiver may not be filed until a processing fee has been paid.  [*Id.* at ¶ 53 (citing 8 C.F.R. § 212.7(e)(4)(ii)(A))]  Due to an unexplained error, U.S. Citizenship and Immigration Services ("USCIS") failed to forward Mr. Edlicico's I-130 petition to the Department of State, which prevented Mr. Edlicico from paying the processing fee.[2]  [*Id.*]

While this situation was unfolding, in October 2025, ICE issued Mr. Edlicico a "call-in letter" which required that he report in person to ICE on November 15, 2025.  [*Id.* at ¶ 54]  Mr. Edlicico communicated with ICE through counsel and provided documentation showing that he was in the midst of the provisional waiver process.  [*Id.* at ¶ 55]  Mr. Edlicico requested that the scheduled check-in be postponed or cancelled to allow him to continue through the provisional waiver process.  [*Id.*]  However, on November 12, 2025, an ICE Assistant Field Office Director informed Petitioner's counsel that Petitioner would need to report in person and "get set up with regular check-ins."  [*Id.* at ¶ 56]  Mr. Edlicico reported to ICE on November 15, 2025, as required.  [*Id.* at ¶ 57]  At that time, he was provided an Order of Supervision which indicated that Mr. Edlicico would need to report in person again on November 10, 2026.  [*Id.*; #10 at 4]  The Order of Supervision stated that out-of-state travel would require ICE approval.  [#1 at ¶ 58]  Given that Mr. Edlicico works as a truck driver and thus frequently travels out of state, Mr. Edlicico spoke with ICE about this condition and was approved to travel out of state.[3]  [*Id.*]

On May 15, 2026, Petitioner went to Denver International Airport to board a domestic flight to Florida.  [*Id.* at ¶ 60]  After passing through airport security, Mr. Edlicico

---

[2] The I-130 petition has since been forwarded to the Department of State.  [*Id.* at ¶ 59]
[3] Respondents do not appear to dispute this fact.

went to his gate where he found two ICE officers waiting for him.  [*Id.*; #10 at 4]  The ICE officers informed Mr. Edlicico that he would not be boarding his flight and that he had to come with them.  [#1 at ¶ 60]  The ICE officers claimed that Mr. Edlicico had "been on the run" since the 2014 Removal Order was issued.  [*Id.* at ¶ 61]  Though Mr. Edlicico tried to explain that he had an Order of Supervision, the ICE officers refused to look at this documentation.  [*Id.*]  Neither the ICE officers nor any other individual ever informed Mr. Edlicico that his Order of Supervision had been revoked.[4]  [*Id.* at ¶¶ 62, 66]  However, Respondents inform the Court that Mr. Edlicico's Order of Supervision was indeed revoked and that ICE "intends to issue a formal Notice of Revocation of Release and provide Petitioner with an informal interview pursuant to 8 C.F.R. § 241.4(l)."  [#10 at 4] Respondents indicate that Mr. Edlicico was detained to effectuate his removal to Moldova. [*Id.*]  The ICE officers proceeded to take Mr. Edlicico to the ICE processing center in Aurora, Colorado, where he remains in custody today.  [#1 at ¶¶ 2, 61]

Respondents inform the Court of some additional information about actions that have been taken since Mr. Edlicico's arrest.  On May 28, 2026, ICE served Mr. Edlicico with a Form I-229(a) which notified Mr. Edlicico of the consequences of taking any action to prevent or hamper his removal.  [#10 at 4]  ICE also served Mr. Edlicico with a Notice of File Custody Review which advised him that ICE will review his custody status and potential for release on an order of supervision.  [*Id.*]  Respondents state that Mr. Edlicico has agreed to complete a Moldovan travel document form after he initially declined to do so.  [*Id.* at 5]  Respondents indicate that once Mr. Edlicico completes the form, ICE will

---

[4] Respondents do not appear to dispute this fact.

4

submit it along with supporting documentation to the consulate of Moldova for approval and issuance of a travel document. [*Id.*]

The Petition includes ten claims. First, Petitioner asserts a claim for unlawful indefinite detention in violation of 8 U.S.C. § 1231 and the Due Process Clause of the Fifth Amendment of the United States Constitution. [#1 at ¶¶ 70-74] Second, Petitioner asserts an "as-applied challenge" for violation of his Fifth Amendment right to Due Process. [*Id.* at ¶¶ 75-80] Third, Petitioner asserts a Substantive Due Process claim for violation of his Fifth Amendment rights. [*Id.* at ¶¶ 81-87] Fourth, Petitioner asserts a Procedural Due Process claim for violation of his Fifth Amendment rights. [*Id.* at ¶¶ 88-97] Fifth, Petitioner asserts a claim for violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702(2)(A), (B). [*Id.* at ¶¶ 98-105] Sixth, Petitioner asserts a claim for violation of the *Accardi* doctrine (*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)). [#1 at ¶¶ 106-11] Seventh, Petitioner asserts a claim for violation of the Immigration and Nationality Act ("INA") and its applicable regulations as applied to Petitioner's detention during the provisional waiver process. [*Id.* at ¶¶ 112-14] Eighth, Petitioner asserts a claim for violation of the INA and its applicable regulations as applied to Petitioner's removal. [*Id.* at ¶¶ 115-19] Ninth, Petitioner asserts a claim for violation of United States Constitutional Due Process as applied to Petitioner's removal. [*Id.* at ¶¶ 120-22] Tenth, Petitioner asserts a claim for violation of the APA as applied to Petitioner's detention and removal. [*Id.* at ¶¶ 123-27] Respondents filed a Response opposing all of Petitioner's asserted relief [#10] and Petitioner replied [#11].

## II.    LEGAL STANDARD

### A.  Habeas Corpus under 28 U.S.C. § 2241

Section 2241 authorizes courts to adjudicate a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."  *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881-NYW, 2025 WL 3653158, at *3 (D. Colo. Dec. 17, 2025).  "The writ of habeas corpus is designed to challenge 'the fact or duration' of a person's confinement."  *Ramirez v. Bondi*, No. 25-cv-1002-RMR, 2025 WL 1294919, at *3 (D. Colo. May 5, 2025) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)).

"Habeas corpus proceedings under § 2241 'remain available as a forum for statutory and constitutional challenges to post-removal-period detention' effectuated under § 1231(a)(6)."  *Juarez v. Choate*, No. 1:24-cv-00419-CNS, 2024 WL 1012912, at *3 (D. Colo. Mar. 8, 2024) (quoting *Singh v. Choate*, No. 23-cv-02069-CNS, 2024 WL 309747, at *1 (D. Colo. Jan. 26, 2024)).  "[A] noncitizen may bring a habeas petition under this section if his or her confinement violates the Fifth Amendment's guarantee of due process."  *Id.* (citing *Diaz-Ceja v. McAleenan*, No. 19-cv-00824-NYW, 2019 WL 2774211, at *3 (D. Colo. July 2, 2019)).

### B.  Post-Removal Detention under 8 U.S.C. § 1231

"[W]hen [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days."  8 U.S.C. § 1231(a)(1)(A).  This 90-day period is referred to as the "removal period."  *Id.*  Generally, "[i]f the

6

[noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under" certain regulations. *Id.* § 1231(a)(3). Those regulations, which govern the release and revocation of release of noncitizens subject to a final order of removal, are 8 C.F.R. § 241.4 and § 241.13. Both regulations were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025).

Under 8 C.F.R. § 241.4(l)(1), "[a]ny [noncitizen] . . . who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody." In addition, release may be revoked when "[i]t is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]" or when "[t]he conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate." *Id.* §§ 241.4(l)(2)(iii)-(iv). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release or parole." *Id.* § 241.4(l)(1). "The [noncitizen] will be afforded an initial informal interview promptly after his or her return to . . . custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.*

Additional special review procedures apply to noncitizens who "are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period" when the noncitizen provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* § 241.13(a). Noncitizens who are released under an order of

7

supervision under this section may be returned to custody if they violate any of the conditions of release. *Id.* § 241.13(i)(1). Additionally, release under this section may be revoked "if, on account of changed circumstances" it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). In either case, "[u]pon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release." *Id.* § 241.13(i)(3). An interview must be "promptly" conducted in which the noncitizen has the "opportunity to respond to the reasons for revocation stated in the notification." *Id.*

Certain noncitizens, including those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal, "may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6). "The text of the INA does not contain an express limit on the duration a noncitizen may be detained under its authority." *Juarez*, 2024 WL 1012912, at *3.

## III.  ANALYSIS

Petitioner argues that revocation of his supervised release unlawfully violated the regulations set forth in 8 C.F.R. § 241.4(l) and § 241.13(i). [#1 at ¶ 101] Petitioner does not appear to know under which regulation–8 C.F.R. § 241.4 or § 241.13–his supervised release was revoked and he was re-detained. Respondents indicate that the proper regulation to be considered is 8 C.F.R. § 241.4. [*See* #10 at 4 ("ICE intends to . . . provide Petitioner with an informal interview pursuant to 8 C.F.R. § 241.4(l).")] Respondents thus argue that: (1) Petitioner has not shown that 8 C.F.R. § 241.4(l) has been violated, (2) Petitioner has not shown prejudice, and (3) even if ICE has not yet complied with the regulation, immediate release is not the proper remedy. [*Id.* at 9-11]

8

The Court disagrees.  First, Petitioner has alleged that he has not been "notified of the reasons for revocation of his . . . release" as is required under 8 C.F.R. § 241.4(l)(1) "[u]pon revocation."    [#1 at ¶¶62-68; 99-105] Respondents have not provided any evidence to the contrary.  Rather, Respondents contend only that Petitioner's release on supervision was revoked.  [##10 at 4; 10-1 at ¶ 20]  Section 241.1(l)(2) provides reasons a revoking official may revoke release, such as: "(i) [t]he purposes of the release have been served; (ii) [t]he [noncitizen] violates any condition of release; (iii) [i]t is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]; or (iv) the conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate."  8 C.F.R. § 241.1(l)(2).  Respondents have not provided any indication that they informed Petitioner that his supervised release was revoked for any of these reasons.  Indeed, it is unclear to the Court whether Petitioner's supervised release actually was revoked for any of these reasons.  Though Respondents focus on their intent to provide Petitioner with an informal interview [#10 at 9], this is not the only requirement with which Respondents must comply—Respondents must provide notice of the reasons for the revocation.  8 U.S.C. § 241.4(l)(1).  Indeed, the informal interview process would be virtually meaningless if the noncitizen was not informed of the purported reasons for the revocation.  Furthermore, Respondents do not contend that Petitioner was afforded an informal interview where he had the opportunity to respond to any reason for the revocation, nor do they identify any specific timeline in which they expect to afford Petitioner with such an interview.  Accordingly, Petitioner has shown that 8 C.F.R. § 241.1(l) was violated.

Second, Petitioner has alleged that he has been in detention since May 15, 2026. [#1 at ¶ 60] This in itself indicates that failure to provide Petitioner notice was prejudicial. "Respondents' failure to comply with the governing regulation is prejudicial in that, if the regulation had been followed, Petitioner would have had a meaningful timely opportunity to no longer be detained." *Nguyen v. Archambeault*, No. CV-25-04107-PHX-SHD (ASB), 2025 WL 3250922, at *1 (D. Ariz. Nov. 21, 2025). The delay of nearly a month and counting has deprived Petitioner of the opportunity to challenge the reasons for his detention.

Third, courts across the country have found that immediate release is appropriate under similar circumstances. "[W]here an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid.'" *Rombot v. Souza*, 296 F.Supp.3d 383, 388 (D. Mass. 2017) (quoting *Waldron v. I.N.S.*, 232 F.3d 258, 262 (1st Cir. 2000)). In such circumstances, the "[p]etitioner's immediate release is required to return him to the status quo ante—the last uncontested status which preceded the pending controversy." *Archambeault*, 2025 WL 3250922, at *1 (quotation omitted); *see also Arnez Copa v. Noem*, No. 1:25-cv-04053-RMR, 2026 WL 1256827, at *3 (D. Colo. Mar. 9, 2026) (finding that immediate release is appropriate where ICE violates its own regulations by detaining a petitioner without notifying him of the reason he was being detained); *Izquierdo Navarro v. Bondi*, No. 25-cv-04210-NYW, 2026 WL 468582, at *3-4 (D. Colo. Feb. 18, 2026) (granting a petitioner's writ of habeas corpus where ICE failed to provide the petitioner with notice of revocation and informal interview in violation of 8 C.F.R. § 241.4(I)); *Nguyen v. Albarran*, No. 1:25-cv-1926 CSK, 2026 WL

10

184513, at *7 (E.D. Cal. Jan. 23, 2026) (finding that "ICE's failure to comply with 8 C.F.R. § 241.13 violated [the] petitioner's due process rights" thus granting the petitioner's writ of habeas corpus and ordering his release); *Rodriguez Romero v. Ladwig*, No. 25-1106-JWD-EWD, 2026 WL 321437, at *11, 17 (M.D. La. Feb. 6, 2026) (agreeing with "the majority of courts throughout the country" that "ICE's regulations–8 C.F.R. § 241.4, 241.13–mandate important procedural safeguards against wrongful detention" and thus ordering the petitioner's release); *Nguyen v. Lyons*, No. 25-cv-631-MSM-PAS, 2026 WL 125093, at *4 (D.R.I. Jan. 16, 2026) (finding that "the government is not free to ignore their own regulations or the Fifth Amendment due process protections in order to re-detain [a petitioner] while they are simply waiting for ICE to determine whether a travel document is approved" and thus ordering the petitioner's release (quotation omitted)); *N.A.L.R. v. Bondi*, No. 4:25-cv-00192-SEB-KMB, 2025 WL 2987239, at *2-3 (S.D. Ind. Oct. 23, 2025) (granting a petition for writ of habeas corpus and ordering a petitioner's release where the respondents violated the procedural protections offered by 8 C.F.R. § 241.4); *Phongsavanh v. Williams*, No. 4:25-cv-00426-SMR-SBJ, 2025 WL 3124032, at *6 (S.D. Iowa Nov. 7, 2025) (granting a petition for writ of habeas corpus and ordering a petitioner's release where the petitioner had been on supervised release for 25 years and the government failed to follow the regulations set forth in 8 C.F.R. § 241.13(i)); *Villanueva v. Tate*, 801 F. Supp. 3d 689, 705 (S.D. Tex. 2025) (finding that the government violated the petitioner's due process rights by re-detaining him without complying with 8 C.F.R. § 241.4(l) and that the only way to vindicate the petitioner's due process rights was to order his release from custody).

11

Respondents cite several cases in support of the contention that release is an improper remedy for procedural violations of immigration regulations, none of which is persuasive.  [#10 at 10-11]  The Court's reasoning for finding these cases unpersuasive is the same as that described in a prior opinion in which the respondents cited the same cases when addressing a similar fact pattern.  *See Virachak v. Baltazar*, No. 26-cv-00391-STV, 2026 WL 746285, at *4 (D. Colo. Mar. 17, 2026).  In sum, Respondents cite non-binding cases that do not resemble the fact pattern in this case.

Thus, Petitioner has demonstrated that, following his initial arrest, he was subject to an order of supervision and that his release was never revoked by any official with authority or according to the prescribed legal process.  Given that Respondents have not provided the Court with any documentation of the revocation of Petitioner's supervised release, nor any information as to who authorized a revocation or for what reason, the Court finds that Respondents have failed to follow the regulations outlined in 8 C.F.R. § 241.4(l) and thus have failed to afford Petitioner due process.  *See*, *e.g.*, *Villanueva*, 801 F.Supp.3d at 699-700 ("In the absence of some evidence showing that [the petitioner's] Order of Supervision was lawfully revoked by someone with the authority to do so and for a reason lawfully permitted, the government has failed to show that it afforded [the petitioner] with due process in connection with the purported revocation of his Order of Supervision.").  And Respondents have not identified any basis to believe that Petitioner poses a danger to the public.  Thus, pursuant to the APA, revocation of Petitioner's release and his current detention are contrary to law and must be rescinded and set aside. *See Izquierdo Navarro*, 2026 WL 468582, at *3 ("[C]ourts across the country routinely hold that (1) ICE violating its own regulations in detaining an individual is a due process

violation, and (2) this violation makes the detention unlawful and the proper remedy is release." (citing *Sanchez v. Bondi*, No. 25-cv-02287-CNS, 2025 WL 3484756, at *2 (D. Colo. Dec. 4, 2025); *Nguyen v. Hyde*, 788 F.Supp.3d 144, 152-53 (D. Mass. 2025); *Guerra v. Bondi*, No. CIV-25-1240-G, 2026 WL 114258, at *8 (W.D. Okla. Jan. 15, 2026); *Funes v. Francis*, No. 25 Civ. 7429 (PAE), 2025 WL 3263896, at *25 (S.D.N.Y. Nov. 24, 2025); *Grigorian v. Bondi*, No. 25-cv-022914-RAR, 2025 WL 2604573, at *9-10 (S.D. Fla. Sept. 9, 2025)). The Court thus respectfully GRANTS Petitioner's habeas petition. Given this Order, the Court does not address any independent bases for Petitioner's release.

Petitioner also requests that the Court enjoin "Respondents from removing or attempting to remove [Petitioner] in violation of the Constitution as well as statutory and regulatory procedures while he seeks to legalize his status through the provisional waiver process." [#1 at 33] However, Petitioner does not present any legal authority for the Court to pre-emptively enjoin Respondents in this manner. Nor does Petitioner present any evidence suggesting that Respondents intend to violate the Constitution or statutory and regulatory procedures after he is released. Accordingly, the Court finds that an injunction of this nature is premature.

## IV.     CONCLUSION

For the foregoing reasons, Mr. Edlicico's Petition is **GRANTED** to the extent it seeks his immediate release.[5] Respondents are ordered to release Mr. Edlicico from ICE custody within seven days. The Court orders Respondents to file a status report within

---

[5] To the extent Petitioner seeks an award of attorney's fees, he may file a separate motion for fees that complies with the Federal Rules of Civil Procedure and the Local Rules of Practice for this District.

ten days of the issuance of the Court's opinion and judgment to certify compliance with

this opinion and the corresponding judgment.

DATED:  June 16, 2026                    BY THE COURT:


                                         s/Scott T. Varholak
                                         United States Magistrate Judge